UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,

        *Plaintiff,*

    v.

FEDERAL BUREAU OF INVESTIGATION,
et al.,

        *Defendants*.

Civil Action No. 23-2172 (BAH)

## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

DANIEL Z. EPSTEIN (D.C. Bar No. 1009132)
MICHAEL DING (D.C. Bar No. 1027252)
JACOB MECKLER (D.C. Bar No. 90005210)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003
(202) 743-6409
(972) 861-2132
Daniel.Epstein@aflegal.org
Michael.Ding@aflegal.org
Jacob.Meckler@aflegal.org

*Counsel for the Plaintiff*
*America First Legal Foundation*

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... ii

Introduction .................................................................................................................. 1

Legal Standards ........................................................................................................... 2

Factual Disputes .......................................................................................................... 3

Argument ..................................................................................................................... 5

   I.    The FBI Failed to Conduct a Reasonable Search ............................................. 5

   II.   The FBI Improperly Categorically Withheld Information Under FOIA Exemptions 5, 6, and 7(C) ......................................................................................................... 6

      A.   Exemption 5 is Inapplicable ........................................................................ 6

      B.   The Categorically Withholdings Under Exemptions 6 and 7(C) Are Improper .......... 10

   III.   Decision on the underlying exemptions should be withheld. ....................................... 15

Conclusion ................................................................................................................. 16

**TABLE OF AUTHORITIES**

## CASES

*Am. Oversight v. U.S. Dep't of Justice,*
        375 F. Supp. 3d 50 (D.D.C. 2019) .............................................................. 1, 4, 14

*Arieff v. U.S. Dep't of Navy,*
        712 F.2d 1462 (D.C. Cir. 1983) ........................................................................ 10

*Beck v. Dep't of Just.,*
        997 F.2d 1489 (D.C. Cir. 1993) ........................................................................ 10

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,*
        746 F.3d 1082 (D.C. Cir. 2014) ................................................ 2, 3, 10, 13, 15

*Common Cause v. National Archives and Records Service,*
        628 F.2d 179 (D.C. Cir. 1980) .......................................................................... 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n.,*
        532 U.S. 1060 (2001) ......................................................................................... 7, 8

*Dep't of Just. v. Reporter's Comm. for Freedom of the Press,*
        489 U.S. 749 (1989) ................................................................................... 2, 10, 11

*Djenasevic v. Exec. Off. for United States Att'ys,*
        2019 WL 5390964 (D.C. Cir. Oct. 3, 2019) ................................................... 10

*Djenasevic v. Exec. Off. of United States Att'ys,*
        319 F. Supp. 3d 474 (D.D.C. 2018) ................................................................. 10

*DOD v. FLRA,*
        510 U.S. 487 (1994) ............................................................................................ 11

*DOJ v. Reps. Comm. for Freedom of the Press,*
        489 U.S. 773 ................................................................................................ 11, 12

*Dow Jones & Co., v. Dep't of Just.,*
        917 F.2d 571 (D.C. Cir. 1990) ......................................................................... 7, 8

*Doyle v. United States Dep't of Homeland Sec.,*
        959 F.3d 72 (2d Cir. 2020) .................................................................................. 9

*Elec. Frontier Found. v. U.S. Dep't of Just.,*
        739 F.3d 1 (D.C. Cir. 2014) ................................................................................. 2

*Federal Open Market Committee of Federal Reserve System v. Merrill*,
    443 U.S. 340 (1979).................................................................................................. 15

*Federal Trade Commission v. Meta Platforms Inc., (JEB)*,
    2022 WL 4078930 (D.D.C. Sept. 6, 2022) .......................................................... 7

*Gallant v. N.L.R.B.*,
    26 F.3d 168 (D.C. Cir. 1994) ................................................................................ 2

*Kimberlin v. Dep't of Just.*,
    139 F.3d 944 (D.C. Cir. 1998) ............................................................................ 13

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) ............................................................................................... 8

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir. 1986) .............................................................................. 5

*Nation Magazine, Washington Bureau v. U.S. Customs Service*,
    71 F.3d 885 (D.C. Cir. 1995) .............................................................................. 11

*New Orleans Workers' Ctr. for Racial Just. v. United States Immigr. & Customs Enf't*,
    373 F. Supp. 3d 16 (D.D.C. 2019) ...................................................................... 10

*Reporters LLC v. United States Dep't of Just.*,
    248 F. Supp. 3d 115 (D.D.C. 2017) .................................................................... 10

*Rockwell Intern. Corp. v. U.S. Dep't of Just.*, 235 F.3d 598 (2001)......................... 7, 8

*Stern v. F.B.I.*,
    737 F.2d 84 (D.C. Cir. 1984) .............................................................................. 13

## STATUTES

5 U.S.C. § 551(1) ........................................................................................................ 7

5 U.S.C. § 552(1)(A)................................................................................................... 7

5 U.S.C. § 552(b) ...................................................................................................... 10

5 U.S.C. § 552(f)(1) ................................................................................................... 7

## REGULATIONS

5 C.F.R. § 2635.502 .................................................................................................. 14

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 56 .................................................................................................................... 2

**STATE RULES**

District of Columbia Civil Procedure Rule 7(m) ......................................................... 16

# INTRODUCTION

Defendant Federal Bureau of Investigation (FBI) routinely conducts background investigations of individuals to vet them for potential Senate confirmation. The FBI's policies and practices regarding these investigations, the information it collects, and the information it shares with outside parties have changed over time.[1]

On January 6, 2023, America First Legal Foundation (AFL) submitted a Freedom of Information Act (FOIA) request to the FBI seeking records of "the FBI background investigation, Form SF-86, and any supporting security clearance documentation, including waiver forms [completed] by Alejandro Mayorkas … for the purpose of allowing the FBI to conduct a background investigation as part of his nomination[s]" for Secretary of Homeland Security, Deputy Secretary of Homeland Security, Director of the United States Citizenship and Immigration Services, and the United States Attorney for the Central District of California, "as produced to or shared with" Congress. Compl. Ex. A at 4–9, ECF No. 1-1. AFL explained that the FBI had previously released similar information (parts of a Form SF-86) in response to a FOIA request by American Oversight, a government oversight organization similar to AFL. *Id.* at 5 (citing *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50 (D.D.C. 2019)).

Nevertheless, the FBI "categorically denied" the request pursuant to FOIA Exemptions 6 and 7(C). *Id.* at 11–14. AFL timely appealed, *id.* at 1, but Defendant Department of Justice affirmed the FBI's denial because, "[t]o the extent that non-public responsive records exist, disclosure of such records … would constitute a clearly unwarranted invasion of personal privacy." Compl. Ex. B, ECF No. 18-2.

---

[1] Departmental Study Committee: Special Inquiries on Presidential Nominees, Report to the Attorney General, § III: Historical Background 22–32 (1983) (available at https://perma.cc/N46V-2BCZ).

On July 26, 2023, AFL filed suit. Compl., ECF No. 1. Only thereafter did the FBI conduct an initial search for responsive records. Declaration of Michael G. Seidel ¶ 20, ECF No. 18-1 (Seidel Decl.). The Defendants filed an answer on September 27, 2023 (ECF No. 9) and then moved for summary judgment on July 26, 2024, (ECF No. 18), asserting for the first time an additional ground for categorical denial pursuant to the presidential communications privilege under Exemption 5 and additional underlying withholdings pursuant to Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E). Because the Defendants failed to conduct an adequate search, the requested records are not protected by the presidential communications privilege, the public interest in disclosure outweighs the privacy interest that would justify a categorical denial, and there are genuine disputes as to material facts, the Defendants have failed to meet its burden for summary judgment. Accordingly, the Court should deny their motion.

## LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, a Court shall grant summary judgment only "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56. "The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 778 (1989); *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014)).

The agency may justify its withholdings "category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *Citizens for Resp. & Ethics in Washington*, 746 F.3d at 1088 (citing *Gallant v. N.L.R.B.*, 26 F.3d 168, 173 (D.C. Cir. 1994)). But

"[c]ategorical treatment … may be used only when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied." *Citizens for Resp. & Ethics in Washington*, 746 F.3d at 1088 (cleaned up). Otherwise, the agency must "justify its withholdings document-by-document." *See id*. If the agency fails to meet its burden to justify categorical withholding under the claimed exemptions, summary judgment for the Defendants must be denied. *See id*. at 1102.

## FACTUAL DISPUTES

In the Defendants' Statement of Undisputed Material Fact, they assert multiple "facts" that are, indeed, disputed. The Defendants assert that "the background investigation files were transmitted to and viewed by only people on the Biden Transition team "directly involved in … making a determination as to Mayorkas's suitability for employment/appointment/recognition or trustworthiness for access to sensitive or classified information." Def.'s Mem. in Sup. of Mot. for Summ. J. at 16 (ECF No. 18); Def.'s Statement of Undisputed Material Facts, ECF No. 18-9 ¶ 76. However, this is false, as the same files were supposedly transmitted to the Senate Committee on Homeland Security and Governmental Affairs. This dispute is also material, as AFL only requested files "as produced to or shared with Senate Homeland Security and Governmental Affairs majority staff or any other congressional staff." Plaintiff's FOIA Request (Exhibit A to Def's Mot. for Summ. J.), ECF 18-2 at 6-7. If the Defendants' telling is correct, they should have informed AFL that there were no responsive records. They did not.

Likewise, AFL requested SF-86 forms beyond the one Defendants discuss. *See* ECF No. 18-2 at 6–7 (original request); Def.'s Mem. in Sup. of Mot. for Summ. J. at 23–24, ECF 18; Def.'s Statement of Undisputed Material Facts ¶¶ 66–71, ECF No. 18-9. The Defendants state that these were prepared for President-elect Biden, but this only applies on its face to the most recent Form

SF-86, the one relating to Mr. Mayorkas's nomination as the Secretary of Homeland Security. Plaintiffs, therefore, dispute this.

The Defendants also assert that release of these documents will have a chilling effect on the ability of future presidents to recruit qualified candidates for sensitive positions. *See* Def.'s Statement of Undisputed Material Facts ¶ 72, ECF No. 18-9. At a minimum, this cannot be a "fact" as it is a prediction by the agency of future consequences of disclosure. This prediction is further weakened by the fact that the agency has made at least one such disclosure, releasing to American Oversight portions of Attorney General Sessions's Form SF-86. It seems unlikely that the Department believes that this made it impossible for the next administration to recruit qualified candidates. They have not explained why this case would be different. At the same time, this purported fact is central to the Defendants' argument (*see* Def.'s Mem. in Sup. of Mot. for Summ. J. at 24, ECF No. 18-1). If there is no risk of undermining a future President's ability to recruit highly qualified candidates, then there is reduced rationale for upholding this application of the Presidential communications privilege.

The Defendants further assert that the information subject to withholding is not reasonably segregable from other information. Def.'s Statement of Undisputed Material Facts ¶¶ 74, 90, 141, ECF No. 18-9. This is false, as the agency has engaged in such segregation before. *See American Oversight*, 375 F.Supp.3d at 59. The agency has done nothing to explain why this situation is different.

Additionally, Seidel asserts that the records would not shed any light on the activities of the government because Mr. Mayorkas was only a potential nominee at the time each was prepared. Seidel Decl. ¶ 42, ECF No. 18-1. This is only partly correct; the records as compiled necessarily contain information about how he conducted government business in his prior

positions and thus shed light on the activities of the components and agencies he led before he was nominated.

Lastly, the Defendants assert that there is no evidence of wrongdoing or impropriety by the FBI, and thus there is a lowered public interest in disclosure. Def.'s Statement of Undisputed Material Facts ¶ 82, ECF No. 18-9; Seidel Decl. ¶ 41, ECF No. 18-1. This is not correct. There are credible allegations that the FBI has engaged in widespread misconduct during the background check process across administrations. *See* Letter from Gene Hamilton, Vice President and General Counsel, America First Legal Foundation. to Representative Jim Jordan, Chairman of the House Judiciary Committee (Sept. 14, 2023) (available at https://perma.cc/5VSN-893A).

## ARGUMENT

Even if their material facts were not disputed, the Defendants are not entitled to a judgment as a matter of law because they failed to conduct an adequate search, the requested records are not protected by the presidential communications privilege, and the public interest in disclosure outweighs the privacy interest that would justify a categorical denial.

## I.     The FBI Failed to Conduct a Reasonable Search

The FBI appears not to have searched any email accounts that would potentially contain records responsive to the request. In his Declaration, Seidel frames the request as seeking the records produced by a Level 1 background investigation conducted at the beginning of December 2020. *See* Seidel Decl. ¶ 25. However, AFL requested four sets of records spanning multiple sessions of Congress (Plaintiff's FOIA Request, ECF No. 18-2 at 6–7), and there is no indication in the record that the FBI ever looked for anything other than the most recent one. While a search obviously does not need to be perfect, it does need to be "adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942,

956 (D.C. Cir. 1986). It is absurd to suggest that searching for only one of four specific requested items is a reasonable way to conduct a search. And yet, it appears that the FBI is asking the Court to bless just such an inadequate search.

Beyond this, AFL specifically requested materials that involved communications with Congress or Congressional Staff (*see* Exhibit 1 to Plaintiff's Complaint, ECF No. 1-1), and the agency declined to search outside of its investigative files. *See* Def.'s Mem. in Sup. of Mot. for Summ. J. at 12. At a minimum, to conduct a reasonable search, the agency should have included the Office of Congressional Affairs within the universe to be searched, as that is the office that "manages all FBI interactions with Congress."[2]

## II. The FBI Improperly Categorically Withheld Information Under FOIA Exemptions 5, 6, and 7(C)

### A. Exemption 5 is Inapplicable.

For the first time, in its Motion for Summary Judgment, the FBI has chosen to assert that all the material can be withheld under exemption 5. Previously, the FBI has relied exclusively on b(6) and b(7)(c) to support the categorical withholding, having never before raised a claim of the presidential communications privilege. Nevertheless, this assertion of a categorical withholding under b(5) is inconsistent with the law, and with prior agency practice.[3] *See* Ex. B to Def.'s Mot. for Summ. J., ECF No. 18-3; Ex. E to Def.'s Mot. for Summ. J., ECF No. 18-6; Seidel Decl. ¶ 23, ECF No. 18-1.[4]

---

[2] *Jill C. Tyson, Assistant Director, Office of Congressional Affairs*, FBI, https://www.fbi.gov/about/leadership-and-structure/tyson (last visited Aug. 16, 2023).

[3] In the case of *American Oversight v. Dep't of Justice*, the Department released sections of then-Attorney General Jeff Sessions' Form SF-86 pursuant to a FOIA request by American Oversight, a liberal, self-described "watchdog" organization.

[4] Additionally, the Defendants have not adequately explained what foreseeable harm would result from releasing these records. Where they have attempted to do so, the Defendants' prior release of portions of the Attorney General Sessions Form SF-86 undermines their argument significantly.

**1. The documents at issue are not "intra-agency or inter-agency" memorandums**

As a threshold matter, "The Department's argument skips a necessary step, for it ignores the first condition of Exemption 5, that the communication be "intra-agency or inter-agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1060, 1067 (2001). "There is ... no textual justification for draining the first condition of independent vitality." *Id.* There can be no argument that the FBI's communication with Congress is an "intra-agency" communication, and the definitions adopted by the FOIA itself make clear that Congress is not an agency. *See* 5 U.S.C. § 552(f)(1) (adopting the definition of agency found at 5 U.S.C. § 551(1)). This definition explicitly excludes Congress. *See* 5 U.S.C. § 552(1)(A). The department simply ignores this textual limitation, and this error is fatal to its argument.

Investigative files prepared, at least partly, for Congressional use have long been held not to qualify under exemption 5 because they are not "inter-agency" communications.[5] Indeed, "it may well be true that if Congress had thought about this question, the Exemption would have been drafted more broadly to include Executive Branch communication to Congress ... But Congress did not, and the words simply will not stretch to cover this situation, because Congress is simply not an agency." *Dow Jones & Co., v. Dep't of Just.* 917 F.2d 571, 574 (D.C. Cir. 1990).

The Defendants, confronted with this caselaw, choose to cite *Rockwell* instead of *Dow Jones*, but Rockwell is inapposite.[6] *Rockwell Intern. Corp. v. U.S. Dep't of Just.*, 235 F.3d 598 (2001). In *Rockwell*, the requester sought documents that the Department of Justice had prepared

---

[5] Some courts describe this as a "waiver," *see e.g., Federal Trade Commission v. Meta Platforms Inc.*, No. CV 20-3590 (JEB), 2022 WL 4078930 (D.D.C. Sept. 6, 2022) (citing *Dow Jones*, 917 F.2d at 573–75).

[6] At the same time, it is questionable whether *Rockwell* is even good law, in light of the Supreme Court's later decision in *Klamath*, in which the Court clarified that the inter or intra-agency requirement means what it says. *Compare Rockwell*, 235 F.3d 604 (D.D.C. 2001); *with Klamath*, 532 U.S. 12 (2001). Where there is a conflict, the Court must apply *Klamath*.

for its own internal investigations and only later decided to submit to Congress. The D.C. Circuit distinguished this situation from *Dow Jones*, explaining that the documents at issue were not created to assist Congress but rather only shared incidentally. When documents are created to "assist Congress," and then shared with Congress, they do not qualify under Exemption 5. *Rockwell*, 235 F.3d at 604. Indeed, given that Presidents have long shared these background investigations with Congress, and the FBI must have been aware of this fact as they compiled the records, assisting Congress with its "advise and consent" duties under the Constitution was necessarily part of the purpose of the investigation.

Together, *Dow Jones* and *Klamath* foreclose the Defendants' Exemption 5 argument. *Dow Jones* makes clear that "Congress is simply not an agency," and *Klamath* prohibits the courts from "draining the [inter or intra-agency] condition of independent vitality." *Dow Jones*, 917 F.2d at 574; *Klamath*, 532 U.S. at 1067. In this light, the Defendants' Exemption 5 argument simply collapses.

### 2. There is no executive privilege that attaches to the records of a President-Elect

The materials at issue in this case were not prepared for a President; they were prepared for a President-elect, who was a private citizen at the time, vested with no constitutional duties or authority. The Defendants cite (and indeed, can cite) no case holding the privilege applicable to a President-elect. Instead, they cite to a declaration by an agency official who makes policy arguments in favor of this conclusion. Interesting as this may be, it is not the law in this Circuit, or any other, that Courts must defer to the policy preferences outlined by agency officials in declarations. Indeed, agency officials have "no warrant to compel judges to change the law to conform with the agency's current policy preferences." *Kisor v. Wilkie*, 588 U.S. 558, 621 (2019) (Gorsuch, J. concurring). Further, the conclusion that the Defendants ask this Court to draw is contradicted by the FBI's own recent practice.

During the administration of President Donald Trump, the General Services Administration turned over thousands of pages of presidential transition records to the Special Counsel's office, with no indication that they claimed a wholesale executive privilege, or any at all. *See* Letter from [REDACTED], Assistant General Counsel, National Security Law Branch, FBI, to Seth Greenfield, Senior Assistant Attorney General, General Law Division, U.S. General Services Administration (May 15, 2017) (available at https://perma.cc/2TNV-4BKV). While this is not dispositive, in the absence of any contrary caselaw, it provides useful guidance and indicates the absence of such a privilege.

Further, the Defendants only argue that the Presidential Communications Privilege covers their withholding of the Form SF-86 and associated materials for the most recent background investigation, the one pertaining to Mr. Mayorkas' nomination as Secretary of Homeland Security. The argument is waived as to the other three investigative files that AFL requested. Even if the records were viewed as a single investigative file, the Defendants' arguments still fail, as a file originally created decades ago, cannot have been created to assist President-elect Biden in determining whether to nominate Mr. Mayorkas to serve as the Secretary of Homeland Security. They only argue Presidential Communications privilege stemming from President Biden's request for an investigation,[7] and many portions of the file necessarily predate that period.

---

[7] If these background investigation files were created by an agency "in response to requests from … the Office of the President" and are subject to the President's control then it is odd that the Defendants do not argue that they are Presidential Records rather than agency records subject to FOIA. *Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72, 77–78 (2d Cir. 2020) (The Second Circuit has recognized the "service provider" concept where, *e.g.*, the Secret Service created records solely to serve the President and so their records should not be considered agency records.); see also 2010 Memo § 5a, ECF No. 18-8 ("The President or his representative will ensure that access to FBI reports is restricted"). Under the "service provider" concept, the FBI is merely servicing the President to make an informed nomination, and the records would be subject to the Presidential Records Act rather than the FOIA. But the Defendants forfeited that argument.

## B. The Categorically Withholdings Under Exemptions 6 and 7(C) Are Improper

Agencies have a duty to segregate or redact records instead of withholding them in their entirety. "An item of exempt information does not insulate from disclosure the entire file in which it is contained, or even the entire page on which it appears. Rather, '[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt.'" *Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1466 (D.C. Cir. 1983) (citing 5 U.S.C. § 552(b)).

The Defendants failed to meet their burden to justify the categorical withholding of records under Exemptions 6 and 7(C). Courts analyze Exemptions 6 and 7(C) concurrently when they are both invoked to withhold information in a case. *See, e.g.*, *Djenasevic v. Exec. Off. of United States Att'ys*, 319 F. Supp. 3d 474, 488 (D.D.C. 2018), *aff'd sub nom. Djenasevic v. Exec. Off. for United States Att'ys*, No. 18-5262, 2019 WL 5390964 (D.C. Cir. Oct. 3, 2019); *New Orleans Workers' Ctr. for Racial Just. v. United States Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 55 (D.D.C. 2019); *100Reporters LLC v. United States Dep't of Just.*, 248 F. Supp. 3d 115, 158 (D.D.C. 2017). "Both exemptions require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *100Reporters LLC*, 248 F. Supp. 3d at 158 (quoting *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)). Here, despite the privacy interests at stake, "in light of the similarly substantial countervailing public interest, the balance does not characteristically tip in favor of non-disclosure." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014).

On one side of the balance sits the subject's interest in privacy. And while a "request for law enforcement records of information about a *private citizen* can reasonably be expected to invade that citizen's privacy." *Dep't of Just. v. Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989) (emphasis added), a privacy interest alone is not enough to prevent

disclosure. In *Reporter's Comm.*, the privacy interest outweighed the public interest because the subject of the request was a private citizen. *Id.* at 780. Not so here. Indeed, parts of the investigative file that deal with Mr. Mayorkas as a private citizen could potentially be withheld under Exemptions 6 and 7(C), but much of the file pertains to his exercise of statutory duties and authority as an agent of the United States in prior roles. Those sections are hardly the records of a "private citizen" like those at issue in *Reporters Comm*. 489 U.S. at 765.

"[C]andidacy for federal office may" further "diminish an individual's right to privacy." *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 895 n.9 (D.C. Cir. 1995); *see also*, *Common Cause v. National Archives and Records Service*, 628 F.2d 179, 184 (D.C. Cir. 1980) (finding that "public figures" have diminished privacy rights under the FOIA.). Mr. Mayorkas may have some privacy interest in the files, but not enough to justify withholding in full when weighed against the strong public interests in disclosure. *See DOD v. FLRA*, 510 U.S. 487, 497 (1994) ("We must weigh the privacy interest … in nondisclosure … against the only relevant public interest in the FOIA balancing analysis — the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens 'know what their government is up to'") (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. at 773).

On the other side of the balance sits the public interest in knowing "what their government is up to." *Reps. Comm. for Freedom of the Press*, 489 U.S. at 773, and the release of the requested records will shed much light on the operations of our government. For one thing, there are serious allegations that the background check process has become broken and politicized. At a minimum, the FBI has repeatedly violated the Paperwork Reduction Act, the Privacy Act, and the FBI's own

Manual of Investigative Operations and Guidelines in its conduct of background investigations.[8] This constitutes evidence of wrongdoing by the agency and adds weight to the public interest in disclosure.

Further, the character and background of the Secretary are key factors in the Department's operations, and who the President selects to lead important agencies is a major part of "what the[] government is up to." Relatedly, Alejandro Mayorkas has been in and out of government for his entire life. Prior to becoming the Secretary of the Department of Homeland Security, he served as an Assistant United States Attorney for nearly a decade, then as a United States Attorney, then as the Director of U.S. Citizenship and Immigration Services, and then as the Deputy Secretary of Homeland Security.[9] Accordingly, background investigations of Mr. Mayorkas necessarily include information about his public service and not merely personal details, information that would shed light on what the government was up to during those periods. Only when the case concerns documents that overall tip in one direction is categorical withholding appropriate. *See Reporters Comm.*, 489 U.S. at 776.

And Mr. Mayorkas is not any ordinary government official. He has now served in multiple senate-confirmed roles across separate presidential administrations — and he has demonstrated ethical violations in at least one of those high-ranking positions.[10] The requested records likely contain information about his intervention as the Director of U.S. Citizenship and Immigration Services in multiple EB-5 adjudications, which led to the Inspector General finding an "appearance

---

[8] *See* Letter from Gene Hamilton, Vice President and General Counsel, America First Legal Foundation. to Representative Jim Jordan, Chairman of the House Judiciary Committee (Sept. 14, 2023) (available at https://perma.cc/5VSN-893A).

[9] *Alejandro Mayorkas*, U.S. Dep't Homeland Sec., https://perma.cc/9JNQ-G3AT.

[10] Memorandum from John Roth, Inspector General, to the Hon. Jeh C. Johnson, Secretary, on Investigation into Employee Complaints about Management of U.S. Citizenship and Immigration Services' EB-5 Program (Mar. 24, 2015) (available at https://perma.cc/CK6Q-RLF5).

of favoritism and special access."[11] "In view of the purpose of the FOIA, it will ordinarily be enough for the court to consider, when balancing the public interest in disclosure against the private interest in exemption, the rank of the public official involved and the seriousness of the misconduct alleged." *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998); *see also Stern v. F.B.I.*, 737 F.2d 84, 94 (D.C. Cir. 1984) ("There is a decided difference between knowing participation by a high-level officer in such deception and the negligent performance of particular duties by the two other lower-level employees."). Here, the high ranks held by Mr. Mayorkas and his documented personal involvement in ethical misconduct weigh in favor of disclosure.

Alternatively, it may be even more noteworthy if the FBI did *not* investigate his past ethical misconduct. Unlike typical FBI background investigations — which follow the Federal investigative Standards, the Domestic Investigations and Operations Guide, or the Manual of Investigative Operations and Guidelines — the investigations for cases involving Senate confirmation might not attempt to mitigate derogatory information with offsetting favorable information or by clarifying whether an unfavorable comment was based on direct knowledge or hearsay."[12] By avoiding mitigation, the FBI could harm a nominee's prospects for confirmation.[13] Likewise, the FBI could have potentially improved Mr. Mayorkas's prospects for nomination and confirmation by not fully investigating the derogatory information relating to his documented ethical misconduct. *Cf. Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) ("It may show whether prominent and influential public officials are subjected to the same investigative scrutiny and prosecutorial zeal as local aldermen and little-known lobbyists.").

---

[11] *Id*. at 1–2, 4–7.
[12] Letter from Gene Hamilton, *supra* note 8, at 10–11.
[13] *Id*. at 5.

Consider also whether the FBI fully investigated Mr. Mayorkas's conflicts of interest relating to his nomination to be Secretary. Due to his prior business relationships, he was restricted during the first two years of his current appointment from "participating in any particular matter involving specific parties that is directly and substantially related to" any entity of a list of 82,[14] many of which are substantially impacted by the Department's border and immigration policies.[15] Given his documented record in a prior role of making "contact with individuals perceived by career USCIS employees to be politically powerful and interven[ing] in the adjudicated process in unprecedented ways to the stakeholders' benefit,"[16] it is in the public interest to uncover whether the FBI investigated the relationship that Secretary Mayorkas has with any of these 82 entities, whether there are other covered parties that he failed to disclose to the agency's designated ethics official, and whether his relationship with any of them — including foreign entities[17] — would impact his suitability for serving as the Secretary of Homeland Security.[18]

Together, the requested records will show the citizenry who has been placed in charge of

---

[14] Alejandro N. Mayorkas, Disqualification Statement and Screening Arrangement (2021) (available at https://perma.cc/TD4F-F2UB) (citing 5 C.F.R. § 2635.502 and Exec. Order No. 13989 (2021)).

[15] *E.g.*, Google's reliance on H-1B labor (*Google, Meta, Amazon Hiring Low-Paid H1B Workers After US Layoffs: Report*, MONEYCONTROL (May 17, 2023), https://perma.cc/G8N6-S5JW); MGM Resorts' reliance on DACA workers (*Caesars, MGM Push for DACA Immigration Reform Affecting Las Vegas 'Dreamer' Employees*, MEDIUM (Jan. 30, 2022), https://perma.cc/2QTJ-62KJ); G6 Hospitality's housing of asylum seekers in its Motel 6 properties (Chris Costa, *Hotel Used by Portland as Shelter Cited by City Inspectors for Health Code Violations*, NEWS CTR. ME. (Mar. 26, 2024), https://perma.cc/64YX-L5FT); or FLIR's ground and surveillance technology contracts with a Department of Homeland Security component agency (*FLIR Wins Awards Worth Up to $23M from US Customs and Border Protection for Improved Ground and Air Surveillance Capabilities*, TELEDYNE FLIR (Jan. 13, 2021), https://perma.cc/GGB4-M4F2).

[16] Memorandum from John Roth, *supra* note 10, at 6.

[17] *E.g.*, Nord Stream 2 AG, Banco Santander S.A., Tokyo Electron Limited (listed in the Disqualification Statement, *supra* note 14).

[18] In *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50 (D.D.C. 2019), the Department released sections of then-Attorney General Jeff Sessions' Form SF-86 relating to his alleged contacts with Russian nationals and individuals.

the Department, describe his qualifications for office, and reveal the extent to which the FBI has politicized or otherwise abused its background investigation process. Indeed, the Defendants do not even attempt to dispute the public interest in Mr. Mayorkas's background investigation (arguing instead the Plaintiff did not provide enough justification in its complaint). This attempts to flip the burden of persuasion and demand that the Plaintiff carry it. However, this is not the law, an agency attempting to invoke an exemption to the FOIA carries the burden of proof as to the elements of that exemption. *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 352 (1979) ("The burden in any such proceeding is on the agency to establish that the requested information is exempt"). The agency has not carried that burden here, as they have made no substantive argument and introduced no facts related to the public interest in this information. Further, Defendants have not adequately explained what foreseeable harm would result from releasing redacted versions of these records.

III. **Decision on the underlying exemptions should be withheld.**

The Defendants also assert that there are underlying redactions justified under Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E). ECF No. 18 at 31. But they fail to justify those redactions with enough detail to allow them to be evaluated, nor enough to determine whether foreseeable harm would result from release. The Plaintiff is not in any position to challenge the applicability of any specific one of these asserted redactions, as it has been denied access to the records wholesale and thus cannot see how these redactions are being asserted in context. Further, the Defendants declined to produce a *Vaughn* index, which makes it impossible for the Parties, or the Court, to accurately evaluate the validity of any individual exemptions.

"Categorical treatment … may be used only when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied." *Citizens for Resp. & Ethics in Washington*, 746 F.3d at 1088 (cleaned up).

Otherwise, the agency must "justify its withholdings document-by-document." *Id*.

As a legal matter, even if there are appropriate redactions invoking some or all of the Defendants' asserted underlying exemptions, any decision on the appropriateness of those redactions should be reserved until after further briefing, if the Court determines that categorical withholding is unjustified.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion for Summary Judgment. The Plaintiff requests oral argument in opposition to the Defendants' motion under Local Civil Rule 7(m). Because there are facts in dispute that are material to the resolution of this FOIA case, the Plaintiff further requests limited discovery, including a deposition of Mr. Seidel to determine whether the agency transmitted the files at issue to Congress, whether the agency has any information substantiating the chilling effect they identify, and how the facts in this case differs from *American Oversight*, where the agency was able to segregate and release information from a Form SF-86.

Dated: August 16, 2024                Respectfully submitted,

*/s/ Jacob Meckler*
DANIEL Z. EPSTEIN (D.C. Bar No. 1009132)
MICHAEL DING (D.C. Bar No. 1027252)
JACOB MECKLER (D.C. Bar No. 90005210)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003
(202) 743-6409
(972) 861-2132
Michael.Ding@aflegal.org
Daniel.Epstein@aflegal.org
Jacob.Meckler@aflegal.org

*Counsel for the Plaintiff*
*America First Legal Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2024, I filed the foregoing with the Clerk of the Court electronically via the Court's ECF system which provides notification of such filing to all counsel of record.

*/s/ Jacob Meckler*
AMERICA FIRST LEGAL FOUNDATION