UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 23-2172 (BAH) |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.  I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. My prior declaration dated July 25, 2024, explained my employment history and responsibilities at the FBI. (ECF No. 17-1, First Seidel Declaration). The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. This declaration incorporates and supplements the First Seidel Declaration (ECF No. 17-1).

2.  This declaration is in further support of the FBI's Motion for Summary Judgment and is in response to Plaintiff's Opposition to Defendants Motion for Summary Judgment filed on August 16, 2024. (ECF No. 19) The purpose of this declaration is to further clarify that the FBI did not provide the background investigation material directly to Congress.

3.  At the request of DOJ, the FBI conducted file reviews ("name checks")[1] and background investigations[2] for Mr. Mayorkas. The name checks and background investigations were conducted to only ascertain facts and information relevant to Mr. Mayorkas': 1) suitability for Federal government employment; 2) suitability to provide services to the President; 3) trustworthiness for clearance to access information classified under the provisions of Executive Order 12958, as amended by Executive Order 13292, and Executive Order 12968 (or any successor Executive Orders) and their implementing directives; or 4) trustworthiness for access to locales in close proximity to or frequented by the President. The FBI did not make any adjudicative decisions as it related to Mr. Mayorkas, but rather conducted an investigation and submitted the raw data to its external client, the Department of Justice.

4.  The FBI did not share the background investigation material directly with Congress, nor did it have any other direct contact with Congress. Furthermore, the FBI did not transmit the materials to any other external entity besides the Department of Justice (DOJ). The background investigation was initiated pursuant to the *Memorandum of Understanding Between the Department of Justice and the Biden Transition Regarding Name Checks and Background Investigations Conducted by the Federal Bureau of Investigation And Adjudications by the Department of Justice ELECTION 2020* (2020 MOU), whereas a designated official from the Office of the President-elect requested a Level I background investigation of Mr. Mayorkas.

---

[1] A name check consists of searching names that have been indexed as part of FBI criminal or national security investigations or as part of FBI background investigations. Additionally, a search of FBI electronic case files will also be conducted to determine whether the individual is or has been the subject of, or has been referenced in, an FBI investigation.

[2] A background investigation may be a full-field background investigation ("Level 1," to the 18th birthday; "Level 2," 15-year scope; "Level 3," 10-year scope; or "Level 4," 5-year scope), a 5-year re-investigation, an expanded name check, a limited update, or a limited inquiry (such as follow-up inquiries conducted to resolve particular issues/questions).

(ECF. No. 17-8) Upon the FBI's completion of the background investigation the background investigation material was sent to the Personnel Security Group ("PERSG")[3] at DOJ on December 22, 2020, to the attention of the Assistant Director of the Presidential Transition Team. A supplemental document was sent on January 5, 2021. Both sets of documents were sent directly to PERSG via the Law Enforcement Enterprise Portal (LEEP).[4] RIDS contacted the unit responsible for conducting background investigations of presidential appointees and, consistent with the 2020 MOU, confirmed that materials were transmitted from the FBI to the DOJ.

## CONCLUSION

5.  In an effort to broadly comply with the FOIA and ensure full transparency, the FBI interpreted the scope of Plaintiff's request to include all potentially relevant records, even those that were not directly shared with Congress. This approach was taken to provide the most comprehensive response possible under the FOIA, despite the records in question not having been transmitted to Congress by the FBI. The FBI has determined that the background investigative materials were not sent directly to Congress. Thus, the FBI has concluded that all of the withheld background investigative material falls under the presidential communications privilege.

---

[3] PERSG is within the DOJ's Justice Management Division (JMD) Security and Emergency Planning Staff (SEPS). SEPS is authorized to make adjudication determinations for both Public Trust positions and National Security Information positions. *See* 28 C.F.R. § 17.11(c) and Executive Order 12968.

[4] The Law Enforcement Enterprise Portal (LEEP) is a secure platform for law enforcement agencies, intelligence groups, and criminal justice entities. LEEP provides web-based investigative tools and analytical resources, and the networking it supports is unrivaled by other platforms available to law enforcement. Users collaborate in a secure environment, use tools to strengthen their cases, and share departmental documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___4th___ day of September 2024.

_____
MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia